Robert M. Cook (SBN 002628)
Kip Micuda (SBN 011921)
THE LAW OFFICES OF ROBERT M. COOK, PLLC
1440 East Missouri Avenue, Suite 185
Phoenix, Arizona 85014
Telephone: (602) 285-0288
Facsimile: (602) 285-0388
E-mail: robertmcook@yahoo.com
*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| **Frank Estrada and Carman Estrada, husband and wife; Othon Luna and Estella Luna, husband and wife,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**City of San Luis, an Arizona municipal corporation; Rural/Metro Fire Department, Inc., an Arizona corporation; Rural/Metro Protection Services, Inc., an Arizona corporation; Rural/Metro Corporation, an Arizona corporation; Rural Metro (Delaware) Corporation (FN), a Delaware corporation; Rafael Torres; Juan Carlos Escamilla; Lee Maness; Gabriel Jimenez,**<br><br>**Defendants**. | Case No.<br><br>**COMPLAINT**<br><br>(Jury Trial Demanded) |

Plaintiffs, Frank Estrada and Carman Estrada and Othon Luna and Estella Luna, by and through their undersigned counsel, and for their Complaint against the Defendants hereby allege as follows:

## JURISDICTION

1. Plaintiffs bring this action against Defendants to redress the deprivation of rights secured them by the United States Constitution and several of its Amendments, federal civil rights statutes and state common law. This Court has jurisdiction over this matter under 28 U.S.C. §§1331, 1332 and 1343; 42 U.S.C. §§1981 and 1983 and 28 U.S.C.

§1367

## VENUE AND REQUEST FOR JURY TRIAL

2. Venue for this action is proper in this District, under 28 U.S.C. §1391, because the events giving rise to the claims occurred in this District.

3. Plaintiffs request a trial by jury as a matter of right under to the 7th Amendment of the United States Constitution and Rule 38, Federal Rule of Civil Procedure.

## ADMINISTRATIVE PROCEDURE

4. Within 180 days of the occurrence of the acts set forth herein, Plaintiffs filed charges of employment discrimination and hostile work environment with the Equal Employment Opportunity Commission, which was copied to the Arizona Attorney General's Office, against Defendants.

5. Notices of right to sue were issued on February 28, 2007 for Plaintiff Estrada and on May 8, 2007 for Plaintiff Luna, by the U.S. Equal Employment Opportunity Commission.

6. Within 180 days of the accrual of Plaintiffs' claims, Plaintiffs filed a Notice of Claim with the City of San Luis.

## PARTIES

7. Plaintiffs Frank Estrada and Carman Estrada are husband and wife and at all times material hereto were residents of Gadsden, Arizona within this District in Yuma County, Arizona.

8. Plaintiffs Othon Luna and Estella Luna are husband and wife and at all times material hereto individuals who reside in San Luis, Arizona within this District in Yuma County, Arizona.

9. Defendant City of San Luis ("City") is a municipality located in Yuma County,

Arizona and incorporated under the laws of the State of Arizona. The City is a "person" within the meaning of 42 U.S.C. §1983.

10. Defendant Rural/Metro Fire Department, Inc., is an Arizona corporation doing business as Rural/Metro Fire and Rescue, within the State of Arizona in San Luis, Arizona. Defendant Rural/Metro Fire Department, Inc., is a "person" within the meaning of 42 U.S.C. §1983.

11. Defendant Rural/Metro Protection Services, Inc., is an Arizona corporation doing business as Rural/Metro Fire and Rescue, within the State of Arizona in San Luis, Arizona. Defendant Rural/Metro Fire Department, Inc., is a "person" within the meaning of 42 U.S.C. §1983.

12. Defendant Rural/Metro Corporation, is an Arizona corporation doing business as Rural/Metro Fire and Rescue, within the State of Arizona in San Luis, Arizona. Defendant Rural/Metro Corporation is a "person" within the meaning of 42 U.S.C. §1983.

13. Defendant Rural/Metro (Delaware) Corporation, is a Delaware corporation lawfully doing business as Rural/Metro Fire and Rescue, within the State of Arizona in San Luis, Arizona. Defendant Rural/Metro (Delaware) Corporation is a "person" within the meaning of 42 U.S.C. §1983.

14. Defendants Rural/Metro Fire Department, Inc.; Rural/Metro Protection Services, Inc.; Rural/Metro Corporation; and Rural/Metro (Delaware) Corporation are known collectively here as "Defendants Rural/Metro."

15. Defendant Rafael Torres is a resident of Yuma County, Arizona, is married and was at all times acting here in furtherance of his marital community. Defendant Torres is a "person" within the meaning of 42 U.S.C. §1983.

16. Defendant Juan Carlos Escamilla is the Mayor for the City of San Luis, is a resident of Yuma County, Arizona, is married and was at all times acting here in furtherance of his marital community. Defendant Escamilla is a "person" within the meaning of 42

3

U.S.C. §1983.

17.     Defendant Lee Maness is the City Administrator for the City of San Luis, is a resident of Yuma County, Arizona, is married and was at all times acting here in furtherance of his marital community. Defendant Maness is a "person" within the meaning of 42 U.S.C. §1983.

18.     Defendant Gabriel Jimenez is the Director of Human Resources for the City of San Luis, is a resident of Yuma County, Arizona, is married and was at all times acting here in furtherance of his marital community. Defendant Jimenez is a "person" within the meaning of 42 U.S.C. §1983

## ALLEGATIONS COMMON TO ALL CLAIMS

19.     Plaintiff Frank Estrada was employed with the City's Fire Department from 1994 through 2006, until his termination as Battalion Chief. During his employment with the City's Fire Department, Mr. Estrada was an excellent employee and fire fighter.

20.     Plaintiff Othon Luna was employed with the City's Fire Department from 1988 through 2006. During this period, he served as a fire fighter, Captain, Acting Fire Chief, Assistant Fire Chief and Fire Chief. During his employment with the City's Fire Department, Mr. Luna was an excellent employee and fire fighter.

21.     Upon information and belief, at all times material to the events giving rise to this action, Defendants Rural/Metro maintained a contract with Defendant City to provide ambulance services.

22.     Defendant City's former Fire Department Chief, Arturo Miranda (not a party to this action, but a current employee of Defendants Rural/Metro), implemented policies and procedures, of which Defendants City and Rural/Metro had full knowledge and with their implicit, if not explicit agreement, that differed from those agreed to in the contract between Defendants City and Rural/Metro.

4

23. These policies and procedures adopted by Arturo Miranda modified the written contract as to how employees supplied by Defendants Rural/Metro were tasked by Defendant City's Fire Department during their duty-shifts; the policies and procedures gave the Fire Chief and Fire Captains greater authority in determining the use of such personnel during duty-shifts.

24. These policy changes benefitted both Defendants City and Rural/Metro.

25. Arturo Miranda negotiated contracts for Defendant City with Defendants Rural/Metro. For the most part, whatever Defendants Rural/Metro requested, Arturo Miranda approved. Arturo Miranda and Defendants Rural/Metro had, and continue to have, a very close relationship.

26. Under the terms of the then existing contract, Defendants Rural/Metro would bill patients directly for ambulance services and retain 100% of the profit.

27. When Plaintiff Othon became Fire Chief of the Fire Department of Defendant City, he insisted that Defendants Rural/Metro provide new equipment, new ambulances and more hours for his part-time employees. Plaintiff Othon also insisted that for every transport of a patient, that $50 of the $100 service fee go to Defendant City. Plaintiff Othon also insisted that Defendants Rural/Metro pay $12,000 per year ($1000/mo.) for administration work that he and Plaintiff Estrada performed.

28. On the last contract Plaintiff Othon negotiated (at the end of 2005) with Defendants Rural/Metro's Yuma Representative, Gary August, and Defendants Rural/Metro's President, Barry Landon, Plaintiff Othon proposed a budget of $375,000 for the City to take on the entire responsibility of the contract, leaving only the billing to be performed by Defendants Rural/Metro. Plaintiff Othon planned to purchase new equipment, purchase a new ambulance and hire three full-time employees. Defendants Rural/Metro confirmed this contract in the presence of Nieves Riedel and Guillermina Fuentes, both City Council members at the time.

5

29. Subsequently, Barry Landon and Gary August informed Plaintiff Othon that they (Defendants Rural/Metro) planned to wait until after the May 2006 election to negotiate the contract. Defendants Rural/Metro then told Plaintiff Othon that he was a problem and that they did not want to deal with him and were supporting Defendants Torres and Escamilla in the election.

30. Defendants Rural/Metros' contract with Defendant City for such services was up for renewal during the time material to the decisions made by it and Defendant City that were adverse to Plaintiffs.

31. During the period of approximately 1994 through 1998, Defendant Torres was employed by Defendant City's Fire Department and supervised by Plaintiffs Estrada and Luna.

32. In approximately May of 1998, after repeated disciplinary actions against Defendant Torres for poor performance and failing to follow department directives, Plaintiffs Estrada and Luna terminated Defendant Torres's employment with the City's Fire Department.

33. Plaintiffs are informed and believe that after Defendant Torres was terminated, Defendant Torres was intent on retaliating against both Plaintiffs.

34. Prior to Plaintiffs being terminated by Defendant City (and prior to Defendant Torres being elected to the City Council), Gerardo Felix, cousin of Defendant Torres, informed others that Defendant Torres told him that Plaintiffs did not know what they were doing and that they needed to be fired.

35. Prior to Plaintiffs being terminated by Defendant City (and prior to Defendant Torres being elected to the City Council), Defendant Torres told Plaintiff Estrada that he did not care for Plaintiff Luna and that if he had a chance he would remove him from the Fire Department.

36. Prior to Plaintiffs being terminated by Defendant City (and prior to Defendant

6

Torres being elected to the City Council), Toma Luna informed Plaintiffs that they were the joke of conversations between Defendant Torres and Gerardo Felix.

37. Plaintiffs are informed and believe that, prior to their terminations, Police Officer Jesus de Leon related to others that Defendant Torres told him during the election campaign and after winning a Council seat that his group–those on the Council that supported him–planned to fire Plaintiffs.

38. Plaintiffs are informed and believe that, prior to their terminations, Defendant Escamilla, the current Mayor of Defendant City, and other candidates now City Council members, told Jose Mendoza that they planned to fire Plaintiffs if elected to the Council.

39. Upon information and belief, prior to Plaintiffs being terminated by Defendant City and prior to Defendants Torres and Escamilla being elected to the City Council, Defendants Torres and Escamilla stated to others that Plaintiffs should be terminated because Plaintiffs did not know what they were doing, had been stealing, had been a problem for Defendants Rural/Metro and were political supporters of those adverse to Defendants Torres and Escamilla.

40. Upon information and belief, prior to Plaintiffs being terminated by Defendant City, the City Attorney, (Glenn Gimbut) informed Plaintiff Luna that Defendants Torres and Escamilla will do anything to make Plaintiffs' lives miserable, including terminating them.

41. In May of 2006, Defendants Torres and Escamilla were elected to the City's Council, despite Plaintiffs supporting opposition candidates.

42. In late June 2006, the new Mayor and Council hired Defendant Lee Maness as the new City Administrator. Defendant Maness began holding individual meetings with department heads but avoided meeting with Plaintiff Luna.

43. In early July, 2006, Plaintiff Luna was sent an e-mail by Defendant Maness' Secretary, Laura Leon. The e-mail ordered Plaintiff Luna to contact Defendants Rural/Metro to request a second ambulance for stand-by at the 4th of July celebrations.

7

44. Because he was to be on vacation for two weeks, Plaintiff Luna sent the e-mail and order to Plaintiff Estrada, Battalion Fire Chief, who followed and secured the order.

45. Weeks later, Plaintiffs received confidential letters from Defendant Maness informing each that each had been insubordinate as to the July 4th order and requiring each to explain why each should not be disciplined.

46. Plaintiffs responded in writing to Defendant Maness, with copies to all City Council members, informing him that he was wrong to allege that Plaintiffs were insubordinate and that the July order was followed as it was directed. Plaintiffs also related that it appeared that Defendant Maness did not want to meet with Plaintiff Luna to discuss Fire Department issues or to discuss the ambulance contract between Defendants City and Rural/Metro and the practices exercised under that contract. Plaintiffs invited direction from Defendant Maness if he wanted changes and/or adjustments to the ambulance practice. Defendant Maness never answered the letter, nor did he respond in any way to Plaintiffs.

47. Subsequently, Plaintiffs discovered that Defendants Maness and Escamilla were meeting with Defendants Rural/Metro, excluding Plaintiffs from discussions and negotiations, which was highly unusual.

48. Plaintiffs also discovered that Defendants Maness and Escamilla violated the chain of command by going directly to one of the Fire Captains, Ovet Esparza, and involving him in the ambulance negotiations with Defendants Rural/Metro.

49. Unknown to Plaintiffs at the time, Ovet Esparza wrote a letter to Defendants Rural/Metro stating that if Defendants Rural/Metro refused to provide Defendant City better equipment, vehicles (ambulance) and the like, all those who signed the letter would resign their part-time employment with Defendants Rural/Metro.

50. All Fire Department personnel were asked to sign the letter, except Plaintiffs.

51. Upon information and belief, Ovet Esparza personally gave a copy of this letter to Defendant Maness who forwarded it to Gary August, Rural/Metro Chief in the

Yuma area.

52. Upon receipt of the letter, Defendants Rural/Metro pulled their ambulance from San Luis and cancelled the ambulance contract with Defendant City.

53. Defendants Rural/Metro also terminated all the employees who signed the letter.

54. On or about October 23, 2006, Defendants Rural/Metro filed a letter with Defendant City, alleging that under Plaintiffs' supervision and direction, Defendant City's Fire Department was violating the terms of the contract between Defendants City and Rural/Metro and had committed fraud, notwithstanding that the policies and procedures, noted above, were implemented by a former Fire Chief, now an employee-supervisor with Defendants Rural/Metro, was followed for years with the full knowledge and approval of all parties.

55. Upon information and belief, Defendants Torres, Escamilla, Maness and Jimenez influenced Defendants Rural/Metro to file the complaint formally accusing Plaintiffs of violating the terms of the contract between Defendants Rural/Metro and City.

56. Upon information and belief, the filing of such complaint was agreed to be quid pro quo for Defendant City's renewal of the Rural/Metro ambulance contract.

57. Upon information and belief, Defendants Rural/Metro were informed or led to believe by Defendants Maness and Escamilla that the letter originated from Plaintiffs.

58. Subsequently, in November 2006, Defendants Maness and Jimenez flew to Mesa, Arizona, on behalf of Defendants City, Torres and Escamilla, to meet Barry Landon of Defendants Rural/Metro. The purpose of this trip, in part, was to confirm the mutual understanding or agreement among and between Defendants City, Rural/Metro, Torres, Escamilla, Maness and Jimenez to terminate Plaintiffs from their employment with Defendant City because Plaintiffs had previously terminated Defendant Torres, Plaintiffs had been a problem for Defendants Rural/Metro and Plaintiffs politically supported

9

candidates opposing Defendants Torres and Escamilla in the May 2006 City Council election. In addition, this understanding or agreement provided that the contract between Defendants City and Rural/Metro would be maintained.

59. Upon information and belief, each Defendant above understood that Plaintiffs were being terminated, in substantial part if not entirely, because Plaintiffs previously terminated Defendant Torres, Plaintiffs had been a problem for Defendants Rural/Metro and Plaintiffs politically supported candidates opposing Defendants Torres and Escamilla in the May 2006 City Council election.

60. Upon information and belief, each Defendant knew or should have known that terminating Plaintiffs because Plaintiffs previously terminated Defendant Torres, because Plaintiffs had been a problem for Defendants Rural/Metro and/or because Plaintiffs politically supported candidates opposing Defendants Torres and Escamilla, was wrongful under federal law and violated Plaintiffs' federal civil rights.

61. Defendants City, Rural/Metro, Torres, Escamilla, Maness and Jimenez retaliated against and conspired to terminate Plaintiffs. Contacts between Defendants between May 2006 and November 2006, related to Plaintiffs, like the meeting in Mesa Arizona, were all acts in furtherance of the conspiracy.

62. Plaintiffs were put on administrative leave with pay until further notice Thereafter, Defendant City began, what can only be described as its results-oriented investigation of the matter, which led, initially, to its suspension of Plaintiffs, then, ultimately to its termination of Plaintiffs.

63. The conspiracy between Defendants to retaliate against and terminate Plaintiffs concluded with the wrongful terminations of Plaintiffs.

64. The terminations of Plaintiffs by Defendant City was because of a long-standing practice and custom of Defendant City to remove employees who do not politically support the majority of the City Council.

10

65. By retaliating against and terminating Plaintiffs because Plaintiffs previously terminated Defendant Torres, because they had been a problem for Defendants Rural/Metro and/or because Plaintiffs politically supported candidates opposing Defendants Torres and Escamilla, Defendant Maness, the final policy-making authority representing official policy of the City, knew that he violated Plaintiffs' federal civil rights, for which Defendant City is liable.

66. To the extent that Defendant Maness, the final policy-making authority representing official policy of the City, either delegated his authority to Defendant Jimenez to terminate Plaintiffs, or ratified the decision to terminate Plaintiffs, Defendant Maness knew the terminations violated Plaintiffs' federal civil rights, for which Defendant City is liable.

67. After Plaintiffs were terminated by Defendant City, the mother of Defendant Torres, Gloria Torres, stated to others that her son informed her that Plaintiffs were terminated because they had been stealing, had been a problem for Defendants Rural/Metro and because they politically supported opposition candidates.

68. Statements by Defendants asserting, suggesting or indicating that Plaintiffs had been stealing or committed fraud, both crimes, are false.

69. Each Defendant had knowledge of Plaintiffs' political support for those politically opposed to Defendants Torres and Escamilla, during the 2006 City Council election.

70. On or about January 2007, Defendant City referred the matter to the Arizona Attorney Generals Office for criminal investigation, the results of which were findings of no criminal conduct or fraud by Plaintiffs.

71. As a direct and proximate result of the conduct of Defendants, Plaintiffs were compelled to retain counsel.

72. As a direct and proximate result of the conduct of Defendants, Plaintiffs lost

11

their jobs, were unemployed for a time, have been unable to obtain employment similar to what they had with Defendant City and, therefore, lost compensation, which caused related losses, all totaling an amount of more than $500,000.

73. As a further direct and proximate result of the conduct of Defendants, Plaintiffs suffered injury, including but not limited to, economic loss, emotional distress, mental anguish, humiliation, indignation, embarrassment, loss of enjoyment of life and deprivation of their federal civil rights.

74. Defendant Torres is sued for his conduct before being elected to the City Council and for his conduct after being elected to the City Council. As to the state law claims alleged below, exempt from the notice of claim provisions of state law, Defendant Torres is liable for both his actions prior to becoming, and his actions outside the scope of being, a City Council member.

75. Defendants Torres, Escamilla, Maness and Jimenez are sued in their individual and official capacities.

76. Defendants Torres, Escamilla, Maness and Jimenez acted, under color of state law and are, therefore, liable for such actions.

77. Defendants violated clearly established statutory and constitutional rights of which a reasonable person would have known.

78. Defendants acted interdependently; that is, Defendant City, through Defendants Escamilla, Maness and Jimenez, insinuated itself into a position of interdependence with Defendants Rural/Metro and Torres, all acting with a substantial degree of cooperation and wilfully participating in a joint activity to retaliate against and harass, defame and terminate Plaintiffs in violation of their federal civil rights.

79. Defendants Rural/Metro and Torres acted, at times, as private persons in concert with Defendant City, through its employees, Mayor and City Council, to retaliate against and harass, defame and terminate Plaintiffs in violation of their federal civil rights;

12

that is, the actions of Defendants Rural/Metro and some of the action of Defendant Torres should be treated as that of Defendant City and as actions under color of state law.

## COUNT I
## RETALIATION
**(42 U.S.C. §§1981 and 1983)**

(non-governmental and by color of state law)

80. Plaintiffs hereby incorporate the allegations against Defendants, and each of them, in Paragraphs 1-79 as though fully set forth herein.

81. Defendants' retaliation against, and harassment, defamation and termination of, Plaintiffs constitute violations of Plaintiffs' statutory right to be free from retaliation as provided in 42 U.S.C. §1981 under §1983.

82. Because Defendants formed and operated a conspiracy to deprive Plaintiffs of their federal civil rights, and they wrongfully acted in furtherance of the conspiracy, for which Plaintiffs suffered damages, Defendants are jointly liable for the violations of Plaintiffs' statutory right to be free from retaliation as provided in 42 U.S.C. §1981 under §1983.

83. As a direct and proximate result of the conduct of Defendants, and each of them, Plaintiffs suffered injury, including but not limited to, economic loss, emotional distress, mental anguish, humiliation, indignation, embarrassment, loss of enjoyment of life and deprivation of their federal civil rights.

## COUNT II
## UNCONSTITUTIONAL DENIAL OF FIRST AMENDMENT INTERESTS
**(42 U.S.C. §1983)**

84. Plaintiffs hereby incorporate the allegations against Defendants, and each of

13

them, in Paragraphs 1-83 as though fully set forth herein.

85. Defendants' retaliation against, and harassment, defamation and termination of, Plaintiffs constitute violations of Plaintiffs' political affiliation and association rights as provided by the First and Fourteenth Amendments to the United States Constitution under 42 U.S.C. §1983.

86. Because Defendants formed and operated a conspiracy to deprive Plaintiffs of their federal civil rights, and they wrongfully acted in furtherance of the conspiracy, for which Plaintiffs suffered damages, Defendants are jointly liable for the violations of Plaintiffs' voting rights as provided by the First and Fourteenth Amendments to the United States Constitution under 42 U.S.C. §1983.

87. As a direct and proximate result of the conduct of Defendants, and each of them, Plaintiffs suffered injury, including but not limited to, economic loss, emotional distress, mental anguish, humiliation, indignation, embarrassment, loss of enjoyment of life and deprivation of their federal civil rights.

## COUNT III
## UNCONSTITUTIONAL DENIAL OF PROPERTY INTERESTS
## (42 U.S.C. §1983)

88. Plaintiffs hereby incorporate the allegations against Defendants, and each of them, in Paragraphs 1-87 as though fully set forth herein.

89. Defendants' retaliation against, and harassment, defamation and termination of, Plaintiffs constitute violations of Plaintiffs' property interests as provided by the Fifth and Fourteenth Amendments to the United States Constitution under 42 U.S.C. §1983.

90. Because Defendants formed and operated a conspiracy to deprive Plaintiffs of their federal civil rights, and they wrongfully acted in furtherance of the conspiracy, for which Plaintiffs suffered damages, Defendants are jointly liable for the violations of

14

1  Plaintiffs' property interests as provided by the Fifth and Fourteenth Amendments to the
2  United States Constitution under 42 U.S.C. §1983.
3  91.  As a direct and proximate result of the conduct of Defendants, and each of
4  them, Plaintiffs suffered injury, including but not limited to, economic loss, emotional
5  distress, mental anguish, humiliation, indignation, embarrassment, loss of enjoyment of life
6  and deprivation of their federal civil rights.

## COUNT IV
## INVASION OF PRIVACY

92.  Plaintiffs hereby incorporate the allegations against Defendants, and each of them, in Paragraphs 1-91 as though fully set forth herein.

93.  Defendant Torres's conduct in publishing false and misleading information about Plaintiffs is an unreasonable intrusion upon their solitude, seclusion, private affairs and concerns, in a highly offensive manner.

94.  As a direct and proximate result of the conduct of Defendant Torres, Plaintiffs suffered injury, including but not limited to, economic loss, emotional distress, mental anguish, humiliation, indignation, embarrassment, loss of reputation, loss of enjoyment of life and deprivation of their federal civil rights.

## COUNT V
## FALSE LIGHT INVASION OF PRIVACY

95.  Plaintiffs hereby incorporate the allegations against Defendants, and each of them, in Paragraphs 1-94 as though fully set forth herein.

96.  Defendant Torres's conduct in publishing false and misleading information about Plaintiffs placed Plaintiffs in a false light before the public.

97.  This invasion of Plaintiffs' privacy was offensive and objectionable to

15

Plaintiffs and would be highly offensive and embarrassing to any reasonable person.

98.    Defendant Torres acted with reckless disregard of the fact that a reasonable person of ordinary sensibilities would find the invasion highly offensive.

99.    Defendant Torres acted with oppression and malice, with the intent to vex, harass, and injure Plaintiffs.

100.   As a direct and proximate result of the conduct of Defendant Torres, Plaintiffs were exposed to contempt and obloquy and the loss of reputation and standing among the recipients of the false and misleading information in the community, all of which caused Plaintiffs to suffer injury, including but not limited to, economic loss, emotional distress, mental anguish, humiliation, indignation, embarrassment, loss of reputation, loss of enjoyment of life and deprivation of their federal civil rights.

## COUNT VI

## INTENTIONAL INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP

101.   Plaintiffs hereby incorporate the allegations against Defendants, and each of them, in Paragraphs 1-100 as though fully set forth herein.

102.   Plaintiffs claim that Defendants Torres and Rural/Metro improperly interfered with Plaintiffs' individual employment contracts with the City. Defendants were aware of each contract between Plaintiffs and the City of San Luis. Defendants knowingly and intentionally interfered with Plaintiffs' contracts with the City of San Luis.

103.   Plaintiffs suffered damages as a result of the intentional interference with a contractual relationship by Defendants, and each of them.

## COUNT VII

## PUNITIVE DAMAGES UNDER FEDERAL LAW

104.   Plaintiffs hereby incorporate the allegations against Defendants, and each of

16

them, in Paragraphs 1-103 as though fully set forth herein.

105.  By the conduct of Defendants', and each of them, Defendants each consciously sought to damage Plaintiffs or acted intentionally, knowing that their conduct was likely to cause unjustified, significant damage to Plaintiffs.

106.  Defendants' conduct above, by each of them, was willful and egregious, or displays a reckless indifference to Plaintiffs' federal rights, under 42 U.S.C. §1981.

107.  Plaintiffs suffered damages as a result of the punitive damages under federal law by Defendants, and each of them.

## COUNT VIII
## LOSS OF CONSORTIUM

108.  Plaintiffs hereby incorporate the allegations against Defendants, and each of them, in Paragraphs 1-107 as though fully set forth herein.

109.  The tortious conduct of Defendants Torres and Rural/Metro, and each of them, described above, against Plaintiffs causing them bodily harm, including emotional well-being, caused Plaintiffs severe loss of the consortium--society, in the broadest sense, and services--of their respective spouses, for which they are entitled to compensation.

110.  Plaintiffs suffered damages as a result of the loss of consortium by Defendants Torres and Rural/Metro, and each of them.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFFS Frank and Carman Estrada and Othon and Estella Luna ask the Court to enter judgment in their favor against Defendants, and each of them, as appropriate for:

1. General and special damages as may be proven;
2. Statutory damages as may be proven;

17

3. Punitive damages as may be proven;

4. Costs incurred in this action, plus reasonable attorney fees as provided by 42 U.S.C. §1988;

5. Interest on each of the foregoing sums as provided by law; and

6. Such other and further relief as the Court deems appropriate under the circumstances to make Plaintiffs whole.

DATED this 19th day of May, 2008.

**THE LAW OFFICE OF ROBERT M. COOK, PLLC**

By: */s/ Robert M. Cook*
Robert M. Cook, Esq.
Kip M. Micuda, Esq.
*Attorneys for Plaintiffs*

Electronically filed via ECF
this 19th day of May, 2008, to:

United States District Court of Arizona
401 W. Washington Street
Suite 130, SPC 1
Phoenix, Arizona 85003-2118

COPY of the foregoing sent via U.S. Mail this 19th day
of May, 2008, to:

Justin Pierce, Esq.
Richard S. Cohen, Esq.
Sonya K. Parrish-Boun, Esq.
**FORD & HARRISON, LLP**
2525 E. Camelback Road, Suite 450
Phoenix, Arizona  85016
*Attorneys for City of San Luis, Rafael Torres and Jane Doe Torres*

Kimberly A. Demarchi, Esq.
**LEWIS AND ROCA**
40 North Central Avenue
Phoenix, Arizona  85004-4429
*Attorneys for Rural/Metro Fire Department, Inc.*
*Rural/Metro Protection Services, Inc., Rural/Metro*
*Corporation, Rural/Metro (Delaware) Corporation*

By: */s/ Vicki L. Morgan*
Vicki L. Morgan

18