1    **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                         **FOR THE DISTRICT OF ARIZONA**

8

9    Frank Estrada and Carman Estrada,              )    Consolidated Actions
     husband and wife; and Othon Luna and           )
10   Estella Luna, husband and wife,                 )    No. CV-07-1071-PHX-DGC (Lead Case)
                                                     )    No. CV-08-0945-PHX-DGC (Member Case)
11              Plaintiffs,                          )
                                                     )    **ORDER**
12   vs.                                             )
                                                     )
13   City of San Luis, an Arizona municipal          )
     corporation; and Rafael Torres, in his         )
14   personal capacity,                              )
                                                     )
15              Defendants.                          )
                                                     )
16   _____          )
                                                     )
17   Frank Estrada and Carman Estrada,              )
     husband and wife; and Othon Luna and           )
18   Estella Luna, husband and wife,                 )
                                                     )
19              Plaintiffs,                          )
                                                     )
20   vs.                                             )
                                                     )
21   City of San Luis, an Arizona municipal          )
     corporation; Rural/Metro Fire                   )
22   Department Inc., an Arizona corporation;        )
     Rural/Metro Protection Services, Inc., an      )
23   Arizona corporation; Rural/Metro                )
     (Delaware) Corporation (FN), a                  )
24   Delaware corporation; Rafael Torres;            )
     Juan Carlos Escamilla; Lee Maness; and         )
25   Gabriel Jimenez,                                )
                                                     )
26              Defendants.                          )
                                                     )
27   _____          )

28

1    On May 29, 2007, Plaintiffs commenced an action in this Court against the City of

2  San Luis, Rafael Torres, and several other defendants (Case No. CV-07-1071-PHX-DGC)

3  ("First Action"). Nearly a year later, on May 19, 2008, Plaintiff filed another action in this

4  Court against the defendants named in the First Action and three other defendants,

5  Juan Escamilla, Lee Maness, and Gabriel Jimenez (Case No. CV-08-0945-PHX-ROS)

6  ("Second Action"). The actions have been consolidated. Dkt. #22 (CV-08-0945); Dkt. #89

7  (CV-07-1071).

8    Defendants City of San Luis, Rafael Torres, Juan Escamilla, and Gabriel Jimenez have

9  filed a motion to dismiss the Second Action as impermissibly duplicative of the First Action.

10  Dkt. #15 (CV-08-0945).[1] A response and reply have been filed. Dkt. ##19, 21. The Court

11  will grant the motion.

12  **I.    Background.**

13    Plaintiffs Frank Estrada and Othon Luna worked for the City of San Luis fire

14  department. Estrada was a Battalion Chief and Luna was the Fire Chief. Plaintiffs were

15  terminated in 2006.

16    Plaintiffs commenced the First Action by filing a complaint against the City of San

17  Luis, Rafael Torres, CT Corporate System, and various Rural/Metro entities. Dkt. #1

18  (CV-07-1071). Plaintiffs' amended complaint asserts fifteen state law claims, a federal civil

19  rights claim, and a request for punitive damages under federal law. Dkt. #6 ¶¶ 32-86.

20    In an order dated November 15, 2007, the Court dismissed CT Corporate System from

21  this action because the complaint asserted no claim for relief against it, dismissed all claims

22  asserted against Rural/Metro based on Noerr-Pennington immunity, and dismissed all state

23  law claims asserted against the City and Torres based on Plaintiffs' failure to comply with

24  Arizona's notice of claim statute. Dkt. #45.

25    On April 22, 2008, the Court held a conference call with the parties concerning which

26  claims remain in the case. Dkt. #69. The parties briefed the issue (Dkt. ##76, 79-81), and

27

28    [1]The other defendants named in the Second Action have not been served with process.

Plaintiffs filed a motion for leave to file a second amended complaint and a motion to amend the scheduling order ("motion to amend") (Dkt. #77).  In an order dated May 15, 2008, the Court denied the motion to amend and concluded that the remaining claims are a federal employment discrimination claim and a request for punitive damages under federal law. Dkt. #85.

Plaintiffs filed the Second Action four days later.  Dkt. #1 (CV-08-0945).  The suit asserts eight claims:  retaliation in violation of 42 U.S.C. §§ 1981 and 1983, unconstitutional denial of First Amendment interests, unconstitutional denial of property interests, invasion of privacy, false light invasion of privacy, intentional interference with a contractual relationship, punitive damages under federal law, and loss of consortium.  *Id.* ¶¶ 80-110.

**II.   Discussion.**

Defendants argue that the Second Action should be dismissed because it is impermissibly duplicative of the First Action. Dkt. #15.  Despite the fact that Plaintiffs did not oppose consolidation of the two actions (*see* Dkt. #86 at 2), Plaintiffs now contend that the suits are "significantly different" in that they involve different parties and legal theories. Dkt. #19.

"Plaintiffs generally have 'no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same parties.'" *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007) (citation omitted).  Rather, plaintiffs are "required to bring all of [their] claims against the defendants and their privies arising from a single cause of action in one suit." *Id.* at 688 n.1.  Where separate actions are duplicative, the court has discretion to dismiss the second action with prejudice.  *Id.* at 688 & n.1.  "[I]n assessing whether the second action is duplicative of the first, [courts] examine whether the causes of action and relief sought, as well as the parties or privies to the action, are the same." *Id.* at 689.

**A.   Same Causes of Action.**

Courts examine four factors to determine whether causes of action asserted in separate cases are the same:  (1) whether rights or interests established in the first action may be

1   destroyed or impaired by prosecution of the second action, (2) whether substantially the same
2   evidence is presented in the two actions, (3) whether the actions involve infringement of the
3   same right, and (4) whether the actions arise out of the same transactional nucleus of facts.
4   *Id.* The last of these factors "'is the most important.'" *Id.* (quoting *Costantini v. Trans*
5   *World Airlines*, 681 F.2d 1199, 1202 (9th Cir. 1992)).  The Court will address this factor
6   first.

7          Both the First and Second Actions allege the following facts:  From 1994 through
8   1998, Rafael Torres worked for the City's fire department and was supervised by Plaintiffs
9   Frank Estrada and Othon Luna (Dkt. #6 ¶ 23 (CV-07-1071); Dkt. #1 ¶ 31 (CV-08-0945)).
10  Plaintiffs terminated Torres from his job in the fire department (¶¶ 24, 32).   Torres
11  subsequently was elected to the City Council (¶¶ 25, 41).  Rural/Metro had a contract with
12  the City to provide ambulance services (¶¶ 18, 21).  Torres directed Rural/Metro to file a
13  complaint with the City falsely accusing Plaintiffs of violating the terms of the contract (¶¶
14  27, 55).  The filing of the complaint was to be a *quid pro quo* for the City's renewal of the
15  Rural/Metro contract (¶¶ 28, 56).  Rural/Metro accordingly sent a letter to the City asserting
16  that the fire department, under Plaintiffs' supervision, was violating the terms of the contract
17  between Rural/Metro and the City (¶¶ 29, 54).  In response to the letter, the City began a
18  "results-oriented" investigation that ultimately led to Plaintiffs' terminations (¶¶ 30, 62). The
19  City also referred the matter to the Arizona Attorney General for criminal investigation, but
20  no criminal conduct was found (¶¶ 31, 70).  Torres made false and misleading statements that
21  harmed Plaintiffs (¶¶ 55, 93).

22         These alleged facts are common to all claims asserted in both the First and Second
23  actions.  *See id.* at 4.  It therefore is "clear that the two actions share a common transactional
24  nucleus of facts."  *Adams*, 487 F.3d at 690; *see Haywood v. Bedatsky*, CV-05-2179-PHX-
25  DGC, 2007 WL 2692975, at *2 (D. Ariz. Sept. 10, 2007) ( plaintiff's actions arose out of the
26  same nucleus of facts because they related to his employment and were based on the
27  plaintiff's belief that he was discriminated and retaliated against); *Graves v. Peninsula Auto*
28  *Machinists Lodge No. 1414*, No. C-06-0929 SC, 2006 WL 2130786, at *2 (N.D. Cal. July

1   28, 2006) (plaintiff's actions arose out of the same nucleus of facts because they were based

2   on the alleged discriminatory events and acts leading up to the plaintiff's termination and the

3   termination itself). The fact that Plaintiffs have asserted different legal theories in the two

4   actions does not change this conclusion. *See Adams*, 487 F.3d 684 (noting that the plaintiff

5   asserted new legal theories in the second action); *see also Tahoe-Sierra Preservation*

6   *Council, Inc. v. Tahoe Regional Planning Agency*, 322 F.3d 1064, 1078 (9th Cir. 2003)

7   ("Newly articulated claims based on the same nucleus of facts may still be subject to a res

8   judicata finding[.]").

9           The first factor for determining whether causes of action are the same concerns

10  whether rights or interests established in the first action may be destroyed or impaired by

11  prosecution of the second action. There clearly is a risk of inconsistent results if Plaintiffs

12  are permitted to proceed with both the First and Second Actions. Defendants may be found

13  to have terminated Plaintiffs based on there age in the First Action, and to have terminated

14  Plaintiffs in retaliation for exercising their First Amendment rights in the Second Action. In

15  addition, prosecution of the Second Action would render meaningless the Court's order

16  denying Plaintiffs leave to amend the complaint in the First Action. *See Oxbow Energy, Inc.*

17  *v. Koch Indus., Inc.*, 686 F. Supp. 278, 282 (D. Kan. 1988) (noting the "absurd" result if the

18  plaintiffs were allowed to split their claims and thereby reverse the decision to deny their

19  motion to amend); *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, MDL No. 765

20  PHX RCB, 1991 WL 425379, at *2 (D. Ariz. Jan. 7, 1991) (citing *Oxbow*).

21          The second factor considers whether substantially the same evidence is presented in

22  the two actions. The evidence need only be similar, not identical, for this factor to apply.

23  *See Forest Guardians v. Thomas*, 967 F. Supp. 1536, 1549 (D. Ariz. 1997). Here, "[t]here

24  is no doubt there is an overlap of evidence[.]" *Id.* Both actions will involve the presentation

25  of evidence regarding the City's motive for terminating Plaintiffs and the existence and

26  veracity of the alleged tortious statements made by Torres. While additional evidence would

27  be presented in the Second Action, such evidence "'is scarcely enough to establish that the

28  [Second Action] arises out of a different 'transactional nucleus of facts' than that which

1   generated the [First Action].'" *Adams*, 487 F.3d at 690 (quoting *Costantini*, 681 F.2d at
2   1202); *see Int'l Union of Operating Eng'rs-Employers Construction Indus. Pension v. Karr*,
3   994 F.2d at 1426, 1430 (9th Cir. 1993) ("The fact that some different evidence may be
4   presented in this action . . . does not defeat the bar of res judicata.").

5        The final factor concerns whether the actions involve infringement of the same right.
6   Both actions involve Plaintiffs' interests in continued employment with the City, their right
7   to be free from violations of federal civil rights, and their right to privacy.  *See* Dkt. #6 ¶¶
8   42-47, 51-53, 60-65, 74-76; Dkt. #1 ¶¶ 80-103.  Moreover, to the extent the two actions
9   involve distinct rights, "this factor alone does not differentiate the causes of action." *Adams*,
10  487 F.3d at 691.  As noted above, "the most significant factor is that the causes of action
11  arise from a common nucleus of facts."  *Id.*

12       In summary, it is clear that the claims asserted in the Second Action arise out of the
13  same nucleus of facts alleged in the First Action, that the two actions involve the same rights,
14  that a judgment in the First Action may be impaired by a judgment in the Second Action, and
15  that substantially the same evidence would be presented in both actions.  The Court therefore
16  concludes that "the two suits involve the same cause of action." *Adams*, 487 F.3d at 691.

17       **B.    Same Relief.**

18       There is no question that Plaintiffs seek the same relief in both suits – compensatory,
19  statutory, and punitive damages.  Dkt. #6 at 13, ¶¶ 1-3; Dkt. #1 at 17-18, ¶¶ 1-3.

20       **C.    Same Parties or Privies.**

21       Plaintiffs note that the Second Action names three additional defendants:  Juan
22  Escamilla, the Mayor of the City; Lee Maness, the former City Administrator; and Gabriel
23  Jimenez, the Director of Human Resources for the City.  Dkt. #19 at 4; *see* Dkt. #1 ¶¶16-18.
24  These new defendants are in privity with the City because the City can be said to "virtually
25  represent" them in the First Action.

26       "The necessary elements of virtual representation are an identity of interests and
27  adequate representation." *Adams*, 487 F.3d at 691.  An additional feature is the existence of
28  a "close relationship" between the parties.  *Id.* (citation omitted); *see Tahoe-Sierra*

1   *Preservation Council*, 322 F.3d at 1082.  Plaintiffs do not dispute that the City and the new

2   defendants have a close relationship.  Nor do Plaintiffs dispute that the interests of the new

3   defendants are aligned with the City and the City will adequately represent those interests in

4   the First Action.  The Court concludes that Defendants Escamilla, Maness, and Jimenez are

5   in privity with the City.  *See Adams*, 487 F.3d at 691 (finding privity where the new

6   defendants were employees of the original defendant at the time of the events described in

7   the complaint).

8       **D.    Conclusion.**

9       The record clearly demonstrates that the First and Second Actions are duplicative.

10  Under the present circumstances, the Court concludes that dismissal of the Second Action

11  with prejudice is appropriate.  The Court denied Plaintiffs leave to amend the complaint in

12  the First Action because the motion to amend was untimely and Plaintiffs failed to

13  demonstrate good cause to amend the Court's scheduling order.  Dkt. #85 at 4-6.  Plaintiffs

14  filed the Second Action in an attempt to avoid the consequences of their own delay and to

15  circumvent the Court's denial of their untimely motion to amend.  *Compare* Dkt. #1 (CV-08-

16  0945) *with* Dkt. #78 (CV-07-1071).  The fact that Plaintiffs were "'denied leave to amend

17  does not give [them] the right to file a second lawsuit based on the same facts.'"  *Adams*, 487

18  F.3d at 688 (citation omitted); *see In re Dual-Deck Video Cassette Recorder*, 1991 WL

19  425379, at *2 ("A decision denying leave to amend that was based on prejudice to the

20  defendant and dilatoriness in bringing the claims plaintiff sought to add are the sort of

21  grounds that should bar bringing those claims in a later action."); *Oxbow*, 686 F. Supp. at 282

22  ("[T]he court cannot condone plaintiffs' practice of running to a different city within the

23  district and filing a new case every time a judge in a prior action makes a ruling adverse to

24  that litigant's position.").  Moreover, dismissal of the Second Action "promotes judicial

25  economy" and "serve[s] the societal interest in bringing an end to disputes."  *Adams*, 487

26  F.3d at 692-93.

27      **IT IS ORDERED:**

28      1.    Defendants' motion to dismiss (Dkt. #15) is **granted**.

- 7 -

1    2.      Plaintiffs' Second Action (No. CV-08-945-PHX-DGC) is **denied with**

2           **prejudice**.

3    DATED this 6th day of August, 2008.

4

5

6    _____

7                     David G. Campbell
                  United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28